# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2546

_____

Ventura Village, Inc., et al.,       *
                                                *

     Plaintiffs - Appellants,    *
                                                *

     v.                         *
                                                *   Appeal from the United States

City of Minneapolis, Minnesota,   *   District Court for the
                                                *   District of Minnesota.

     Defendant - Appellee,     *
                                                *

Project For Pride In Living, Inc.,  *
                                              *

     Intervenor Defendant - Appellee. *

_____

Submitted: February 14, 2005
Filed: August 17, 2005

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

      Ventura Village, Inc., a neighborhood association, and individual residents of the Ventura Village neighborhood in south central Minneapolis (collectively, "VVI") commenced this action against the City of Minneapolis seeking to enjoin the City from approving construction of Collaborative Village Initiative ("CVI"), a twenty-unit, 128-person "supportive housing facility" in the Ventura Village neighborhood. The project owner, Project For Pride In Living, Inc. ("PPL"), a private non-profit

organization that provides housing, jobs, and training to low-income families, intervened as an additional defendant. The district court[1] granted summary judgment dismissing all claims. VVI appeals the denial of the claims under the Fair Housing Act, 42 U.S.C. §§ 3601-3631 (the "FHA"). Reviewing the grant of summary judgment de novo, we affirm. See Oti Kaga, Inc. v. S.D. Hous. Dev. Auth., 342 F.3d 871, 877 (8th Cir. 2003) (standard of review).

The CVI supportive housing facility (which is now completed and occupied) was designed to provide permanent housing and rehabilitative services for homeless families with one or more members who have a disability, including mental illness and substance abuse. The Minneapolis zoning code includes a spacing requirement that prohibits the construction of a new supportive housing facility within one-quarter mile of an existing supportive housing facility, community correctional facility, community residential facility, inebriate housing facility, motel, or overnight shelter. MINNEAPOLIS CODE § 536.20. Because the Ventura Village neighborhood already contained nine such facilities within one-quarter mile of the proposed CVI site, PPL applied for a conditional use permit[2] waiving the spacing limitation and approving the project. Despite opposition by VVI and others, the City Council granted the waiver and other necessary approvals after extensive review.

The Ventura Village neighborhood contains a disproportionate share of the city's minority population. Because racial minorities tend to be over-represented in the homeless disabled population, it was predicted that a majority of CVI residents

---

[1]The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota.

[2]"A conditional use permit allows the city to review uses, which because of their unique characteristics, cannot be permitted as of right in a particular zoning district, but which may be allowed upon showing that such use in a specified location will comply with all of the conditions and standards of this zoning ordinance." MINNEAPOLIS CODE § 525.300.

would be black, and they must be handicapped to be eligible for supportive housing. The FHA prohibits housing discrimination on the basis of race and disability. See 42 U.S.C. §§ 3604(a) and (f). In this action, VVI alleges that the City's approval of the CVI project, and its general policy of waiving the spacing ordinance, violate those statutes because the waiver policy has the effect of concentrating supportive housing in a small number of neighborhoods like Ventura Village, thereby perpetuating the segregation of minorities and the disabled.

In considering this claim, we begin by focusing more closely on the relevant statutory language. The FHA makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race," 42 U.S.C. § 3604(a), or "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap," 42 U.S.C. § 3604(f)(1). Thus, to violate the Act, the defendant must "refuse," "deny," or "otherwise make unavailable" a dwelling. Various types of municipal actions have been challenged under the FHA because they had the effect of denying housing or making housing unavailable to one or more persons: refusal to grant a special-use permit;[3] enforcement of a spacing restriction;[4] denial of government funding needed for a housing project;[5] and enforcement of an ordinance or policy restricting multi-

---

[3]See Reg'l Econ. Cmty Action Program, Inc. v. City of Middletown, 294 F.3d 35 (2d Cir. 2002).

[4]Compare Familystyle of St. Paul v. City of St. Paul, 923 F.2d 91 (8th Cir. 1991), with Larkin v. Mich. Dept. of Social Servs., 89 F.3d 285 (6th Cir. 1996).

[5]See Oti Kaga, 342 F.3d at 882-84.

family residences to certain areas of the city[6] or excluding public housing from non-minority neighborhoods.[7]

In this case, VVI's prayer for relief was limited to enjoining the City from approving the CVI project. But the complaint included broader allegations that the City "disregards the ordinance's quarter-mile spacing requirement in predominantly non-white neighborhoods, and enforces it in predominantly white neighborhoods," a practice that has "limited the ability" of minority and handicapped residents of Ventura Village, including individual plaintiffs, "to choose housing in neighborhoods other than those in which the City has concentrated supportive housing." The allegation that the City has refused to approve other supportive housing projects in a discriminatory fashion clearly stated a deny-or-make-unavailable claim under 42 U.S.C. § 3604(a) and (f)(1). See Familystyle, 923 F.2d at 92-93; H.R. Rep. No. 100-711, at 24 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2185.

However, the summary judgment record failed to support this allegation of discriminatory enforcement of the spacing ordinance. The City submitted evidence that, since the Zoning Code was amended in 1995 to include the term "supportive housing," the City has approved all eleven applications for supportive housing developments, and six of the eleven were located in majority white neighborhoods. On appeal, VVI concedes "[t]here is no evidence that the [spacing] ordinance has ever been enforced." Instead, the City has approved supportive housing projects wherever private organizations such as PPL have proposed them in both predominantly white and predominantly minority neighborhoods. Though VVI notes testimony by a

---

[6]See United States v. City of Black Jack, 508 F.2d 1179 (8th Cir. 1974); Town of Huntington v. Huntington Branch, NAACP, 488 U.S. 15, aff'g 844 F.2d 926 (2d Cir. 1988).

[7]See Jackson v. Okaloosa County, 21 F.3d 1531 (11th Cir. 1994); United States v. Yonkers Bd. of Educ., 837 F.2d 1181 (2d Cir. 1987).

former alderman that the City Council typically will not approve a development project opposed by the Council member in whose district the project is to be located, the record contains no evidence that this practice, if it existed, has affected the approval of supportive housing projects.

In these circumstances, VVI's claims of race and disability discrimination in violation of the FHA fail for lack of proof that the City has taken any action to "refuse," "deny," or "otherwise make unavailable" a dwelling on account of race or disability. Rather, the City has taken a single race-neutral action -- the grant of a waiver of its spacing requirement -- that *permitted* the creation of additional supportive housing and thereby *increased* the housing available to eligible handicapped persons. VVI argues that the City is liable under the FHA because its approval of CVI "perpetuates segregation." But the plain language of the statute is to the contrary, and VVI cites no case in which a municipality has been held liable under § 3604(a) or § 3604(f)(1) for an action that approved the creation of additional housing, absent proof that the action was part of a discriminatory policy or practice of refusing to approve other housing. VVI presented no evidence of such a discriminatory policy or practice. Thus, even if the City's liberal waiver policy has increased the concentration of supportive housing in Ventura Village, the concentration is attributable to the independent siting decisions of private housing providers such as PPL, not to any City action "making unavailable" or "denying" housing opportunities on the basis of race or disability. Cf. Larkin, 89 F.3d at 291.

VVI urges us to construe our decision in Familystyle as requiring the City to deny PPL a waiver of the spacing ordinance. In Familystyle, we held that the spacing requirements in a Minnesota statute and in the St. Paul zoning code survived rational basis review under the FHA because they were "a legitimate means to achieve the state's goals in the process of deinstitutionalization of the mentally ill." 923 F.2d at 94. But to say that enforcement of a spacing requirement may be justifiable under the FHA is a far cry from holding that the statute imposes a *duty* on the City to block a

-5-

new housing project by enforcing its spacing requirement.  Neither <u>Familystyle</u> nor the statute imposes such a duty.

The judgment of the district court is affirmed.

_____